NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| COMPREHENSIVE SPINE CARE, P.A., <br><br> Plaintiff, <br><br> v. <br><br> OXFORD HEALTH INSURANCE, INC., UNITED HEALTHCARE SERVICES, INC., JOHN DOES 1-10, JANE DOES 1-10, and ABC CORPORATIONS 1-10, <br><br> Defendants. | Civil Action No.: 18-10036 (JLL) <br><br> OPINION |

**LINARES**, Chief District Judge.

This matter comes before the Court by way of a Motion to Dismiss the Amended Complaint filed by Defendants Oxford Health Insurance, Inc. and United Healthcare Services, Inc. pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (ECF No. 10). Plaintiff Comprehensive Spine Care, P.A. has submitted an Opposition to Defendants' Motion, (ECF No. 13), to which Defendants have replied, (ECF No. 22). The Court decides this matter without oral argument pursuant to Rule 78 of the Federal Rules of Civil Procedure. For the reasons set forth below, the Court grants in part and denies in part Defendants' Motion to Dismiss.

## I. BACKGROUND[1]

This case arises from a dispute between a healthcare provider and an insurance company. Plaintiff Comprehensive Spine Care, P.A. is a healthcare provider located in Westwood, New

---

[1] This background is derived from the Amended Complaint, (ECF No. 6 ("Am. Compl.")), which the Court accepts as true at this stage of the proceedings. *See Alston v. Countrywide Fin. Corp.*, 585 F.3d 753, 758 (3d Cir. 2009).

Jersey. (Am. Compl. ¶ 1). On April 24, 2018, Plaintiff filed an action against Defendants Oxford Health Insurance, Inc. and United Healthcare Services, Inc. in the Superior Court of New Jersey, Bergen County, Law Division, alleging violations of New Jersey state law and seeking damages for Defendants' alleged failure to pay Plaintiff for its provision of medical services to an insured patient ("Patient"). (ECF No. 1-1). Defendants, health insurance companies with their principal places of business in Hartford, Connecticut, removed the action to this Court, invoking the Court's diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)(1). (ECF No. 1). On July 23, 2018, Plaintiff filed its Amended Complaint. (ECF No. 6).

Plaintiff is a "non-participating or out-of-network provider" with respect to Defendants' insurance plans. (Am. Compl. ¶ 13). On some date prior to November 7, 2012, representatives from Plaintiff's office "contacted Defendants to request prior authorization" for the provision of medically necessary orthopedic surgery to Patient. (Am. Compl. ¶¶ 14–15). Plaintiff alleges that it "received authorization from Defendants approving the rendering of surgical services to the Patient under authorization number 97522373." (Am. Compl. ¶ 15). On November 7, 2012, a physician employed and/or contracted by Plaintiff performed the necessary surgical procedure on Patient. (Am. Compl. ¶¶ 16–17). Plaintiff then billed Defendants in the amount of $145,032.00 for the surgery, which Plaintiff alleges "represents normal and reasonable charges for the complex procedures performed by a Board-Certified Orthopedic Surgeon practicing in New Jersey." (Am. Compl. ¶ 19). Defendants ultimately paid Plaintiff a total of $1,474.37, leaving Patient to cover the balance of $143,557.63. (Am. Compl. ¶ 20).

Plaintiff asserts claims for breach of contract, promissory estoppel, account stated, and quantum meruit, arguing that, "[b]y authorizing the surgery, Defendants agreed to pay the fair and reasonable rates for the medical services provided by Plaintiff." (Am. Compl. ¶ 24). Defendants now move to dismiss, arguing that all claims are preempted by the Employee Retirement Income

Security Act, 29 U.S.C. § 1001, *et seq.* ("ERISA"), and, alternatively, that the Amended Complaint fails to state a claim upon which relief can be granted. (ECF No. 10-1 ("Mov. Br.")).

## II. LEGAL STANDARD

To withstand a motion to dismiss for failure to state a claim, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

To determine the sufficiency of a complaint under *Twombly* and *Iqbal* in the Third Circuit, the Court must take three steps. "First, it must 'tak[e] note of the elements a plaintiff must plead to state a claim.' Second, it should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' Finally, '[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.'" *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (quoting *Iqbal*, 556 U.S. at 675, 679) (citations omitted).

## III. ANALYSIS

Defendants contend that Plaintiff submitted its bill for the relevant procedure to Oxford Health Insurance "for payment under the Marcus Brothers Textiles Inc. Freedom Direct Plan ('Plan'), which is an employee welfare benefit plan governed by [ERISA]." (Mov. Br. at 7).

3

Defendants therefore argue that Plaintiff's state law claims are preempted by ERISA because the claims implicate Defendants' "administration of an ERISA governed employee welfare benefit plan." (Mov. Br. at 10). ERISA preempts state law in two "separate but related" ways—either completely or expressly. *Pryzbowski v. U.S. Healthcare, Inc.*, 245 F.3d 266, 270 (3d Cir. 2001) (citing 29 U.S.C. §§ 1132(a), 1144(a)). Defendants argue that both of ERISA's preemption provisions bar Plaintiff's claims. (Mov. Br. at 21).

### A. Complete Preemption—ERISA § 502(a)

ERISA's civil enforcement mechanism, § 502(a), "allows a beneficiary or participant of an ERISA-regulated plan to bring a civil action 'to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.'" *Pryzbowski*, 245 F.3d at 271–72 (quoting 29 U.S.C. § 1132(a)(1)(B)). A state law claim is completely preempted by § 502(a) "only if: (1) the plaintiff could have brought the claim under § 502(a); *and* (2) no other independent legal duty supports the plaintiff's claim." *N.J. Carpenters and the Trustees Thereof v. Tishman Constr. Corp. of N.J.*, 760 F.3d 297, 303 (3d Cir. 2014) (citing *Pascack Valley Hosp. Inc. v. Local 464A UFCW Welfare Reimbursement Plan*, 388 F.3d 393, 400 (3d Cir. 2004)). The first prong of this analysis, referred to as the *Pascack* test, requires courts to determine: "1(a) Whether the plaintiff is the type of party that can bring a claim pursuant to Section 502(a)(1)(B), and 1(b) whether the actual claim that the plaintiff asserts can be construed as a colorable claim for benefits pursuant to Section 502(a)(1)(B)"—in other words, whether the plaintiff would have standing to bring a claim under § 502(a). *E. Coast Advanced Plastic Surgery v. AmeriHealth*, No. 17-8409, 2018 WL 1226104, at *2 (D.N.J. Mar. 9, 2018) ("*AmeriHealth*") (quoting *Progressive Spine & Orthopaedics, LLC v. Anthem Blue Cross Blue Shield*, No. 17-536, 2017 WL 4011203, at *5 (D.N.J. Sept. 11, 2017)).

4

Plaintiff's claims in this case do not satisfy the first prong of the *Pascack* test and are therefore not completely preempted by § 502(a). First, Plaintiff is neither a "beneficiary" nor a "participant" of an ERISA-regulated plan—Plaintiff is a healthcare provider asserting claims on its own behalf, not on behalf of Patient. (Am. Compl. ¶ 9). Accordingly, Plaintiff is not "the type of party" that can bring a § 502(a) claim. *AmeriHealth*, 2018 WL 1226104, at *2, 3 ("Because Plaintiff is a third-party provider and does not attempt to assert the rights of [the patient], Plaintiff does not have standing to bring suit under § 502(a)."). Plaintiff also does not allege the existence of an assignment of Patient's rights under an ERISA plan to Plaintiff, which would allow Plaintiff to stand in Patient's shoes. *See CardioNet, Inc. v. Cigna Health Corp.*, 751 F.3d 165, 176 n.10 (3d Cir. 2014) ("[H]ealth care providers may obtain standing to sue [under ERISA § 502(a)] by assignment from a plan participant."). In the absence of such an assignment, courts have held that healthcare providers lack standing to bring claims under § 502(a). *See, e.g., Pascack Valley Hosp.*, 388 F.3d at 404 (concluding that hospital's claim was not preempted by § 502(a) because plan beneficiaries had not assigned their claims to the hospital, noting that "the absence of an assignment is dispositive of the complete pre-emption question"); *N. Jersey Spine Grp., LLC v. Blue Cross and Blue Shield of Mass., Inc.*, No. 17-13173, 2018 WL 2095174, at *2 (D.N.J. May 7, 2018) (holding state law claims not completely preempted by ERISA § 502(a) because there was no evidence that the patient "executed assignments of benefits in connection with his surgery such that ERISA would be applicable"); *Progressive Spine*, 2017 WL 4011203, at *6 (holding plaintiff healthcare provider lacked standing under the first prong of the *Pascack* test because of a lack of a valid assignment of patient's benefits).

Second, Plaintiff's claims cannot be construed as "colorable claim[s] for benefits" under § 502(a). *AmeriHealth*, 2018 WL 1226104, at *2. Plaintiff "does not challenge the type, scope or provision of benefits under" an ERISA-regulated plan, but rather "only asserts its right as a third-

5

party provider to be reimbursed for pre-authorized medical services it rendered" to Patient. *Id.* at *3. While § 502(a) "preempts claims regarding coverage or denials of benefits" under a plan, it "does not . . . preempt claims over the *amount* of coverage provided, which includes disputes over reimbursement." *Emergency Physicians of St. Clare's v. United Health Care*, No. 14-404, 2014 WL 7404563, at *5 (D.N.J. Dec. 29, 2014); *see also Pascack Valley Hosp.*, 388 F.3d at 403–04 (holding provider's claims not preempted where dispute concerned not "the *right* to payment . . . but the *amount*, or level, of payment," which would be determined not by the ERISA plan but by an unrelated agreement between the parties) (quoting *Blue Cross of Cal. v. Anesthesia Care Assoc. Med. Grp., Inc.*, 187 F.3d 1045, 1051 (9th Cir. 1999)).

Because Plaintiff's claims fail the first prong of the *Pascack* test, the Court concludes, without reaching the second prong, that Plaintiff's state law claims are not completely preempted by ERISA § 502(a). *See E. Coast Advanced Plastic Surgery v. Horizon Blue Cross Blue Shield of N.J.*, No. 18-7718, 2018 WL 6178869, at *6–7 (D.N.J. Nov. 26, 2018) (finding similar claims were not preempted by ERISA § 502(a) where the first prong of the *Pascack* test was not met); *Thomas R. Peterson MD PC v. Cigna Ins. Co.*, No. 14-3818, 2014 WL 4054120, at *3 (D.N.J. Aug. 15, 2014) (holding that claims were not preempted by ERISA § 502(a), because the case was "a breach of contract lawsuit for customary medical fees that touches on ERISA only insofar as pre-approval for the disputed procedure was granted by an entity that administers ERISA health plans").

### B. Express Preemption—ERISA § 514

Section 514(a) preempts "any and all State laws insofar as they may now or hereafter relate to any [ERISA] employee benefit plan." 29 U.S.C. § 1144(a). "[T]he phrase 'relate to' [is] given its broad commonsense meaning, such that a state law 'relate[s] to' a benefit plan 'in the normal sense of the phrase, if it has a connection with or reference to such a plan.'" *Pilot Life Ins. Co. v.*

6

*Dedeaux*, 481 U.S. 41, 47 (1987) (quoting *Metro. Life Ins. Co. v. Mass.*, 471 U.S. 724, 739 (1985)). The Supreme Court has described two categories of express preemption under § 514: a state law cause of action is preempted (1) "if it has a 'reference to' ERISA plans" or (2) if it "has an impermissible 'connection with' ERISA plans." *Gobeille v. Liberty Mut. Ins. Co.*, 136 S. Ct. 936, 943 (2016) (citations omitted).

Defendants argue that Plaintiff's claims "relate to" an ERISA-regulated benefit plan because "Patient, whose claims are at issue in this matter, was a member of an ERISA Plan," and because "the only reason [Plaintiff] contacted Defendant was to obtain authorization in compliance with Plan terms." (ECF No. 22 at 15). As a result, Defendants maintain that their "claim determination, related to what benefits are payable, is governed by the terms of the ERISA Plan." (ECF No. 22 at 15). Defendant further argues that Plaintiff's claims must be preempted by § 514 because the "Amended Complaint seeks as damages benefits the Defendant could only be obligated to pay under the terms of the Patient's employee benefit Plan." (Mov. Br. at 22). Plaintiff contends that its action is entirely unrelated to the terms of Patient's benefit plan, as Plaintiff is neither "a party to the Plan," nor was it "aware of any terms of the Plan" when the preauthorization communications giving rise to its claims occurred. (ECF No. 13 ("Opp. Br.") at 10). Plaintiff insists that it "is proceeding on its own state law claims premised on the independent duty to pay Plaintiff created by [Defendants'] preauthorization" of the surgery. (Opp. Br. at 7).

In a recent and nearly identical case out of this District, the Court denied an insurance company's motion to dismiss, concluding that a healthcare provider's state law claims, premised on the defendant's preauthorization of a medical procedure, were not preempted by ERISA § 514. *Glastein v. Aetna, Inc.*, No. 18-9262, 2018 WL 4562467 (D.N.J. Sept. 24, 2018). The Court found that the plaintiff's claims did not "refer to" an ERISA plan because "the Complaint does not claim that Plaintiff was a contracting party to any ERISA plan" nor "allege that payment [was] due to

7

[Plaintiff] according to the terms of an ERISA plan." *Id.* at *2. The healthcare provider's allegations of an implied contract "[did] nothing to suggest" that the plaintiff's claims would "require examination of an ERISA plan." *Id.* The Court also concluded that the state law claims did not have an "impermissible connection with" an ERISA plan, since the "central purpose of ERISA is to protect plan participants and beneficiaries," and "claims brought by a provider against an insurance company do not implicate" that goal. *Id.* at *3.

The Court reaches the same conclusion here. Contrary to Defendants' assertions, Plaintiff's claims do not "relate to" an ERISA-regulated plan because the Amended Complaint does not seek damages pursuant to the terms of Patient's benefit plan. Indeed, nothing in the Amended Complaint directs the Court to consider the terms of Patient's benefit plan in any way. Instead, the Amended Complaint seeks damages arising from an independent relationship between Plaintiff and Defendants. Defendants' arguments that the terms of Patient's plan govern or inform Plaintiff's reasonable expectations regarding Defendants' preauthorization do not alter the Court's analysis because, at this stage in the proceedings, the Court is concerned with the four corners of the Amended Complaint, which premises Defendants' liability solely on representations not facially related to Patient's plan. *See Glastein*, 2018 WL 4562467, at *4 (denying motion to dismiss claims as preempted by § 514, reasoning that "the Complaint provides no reason why the Court would need to reference an ERISA plan to adjudicate Plaintiff's claims").

Other courts in this District have found state law claims asserted by healthcare providers against insurance companies to be preempted by § 514, but those cases are factually distinguishable. For example, several of those cases consider claims arising from preauthorization letters that expressly stated that preauthorization was subject to the terms of an ERISA benefit plan, therefore requiring a court to interpret the plan in order to resolve the dispute. *See, e.g., Glastein v. Horizon Blue Cross Blue Shield of Am.*, No. 17-7983, 2018 WL 3849904, at *1 (D.N.J.

8

Aug. 13, 2018); *Atl. Shore Surgical Assocs. v. Horizon Blue Cross Blue Shield of N.J.*, No. 17-7534, 2018 WL 2441770, at *1 (D.N.J. May 31, 2018). Courts have also found § 514 preemption where a healthcare provider sought to recover in contract against an ERISA-regulated plan itself, *see Our Lady of Lourdes Health Sys. v. MHI Hotels, Inc. Health and Welfare Fund*, No. 09-1875, 2009 WL 4510130, at *1 (D.N.J. Dec. 1, 2009), or where the complaint contained allegations acknowledging the relevance of the terms of an ERISA plan, *see Broad St. Surgical Ctr., LLC v. UnitedHealth Grp., Inc.*, No. 11-2775, 2012 WL 762498, at *5 (D.N.J. Mar. 6, 2012).

In the most analogous case finding § 514 preemption in this District, the Court reasoned that, "by disputing reimbursement for a medical procedure performed on a patient insured by an ERISA plan, Plaintiff asserts quintessential ERISA claims." *Adv. Orthopedics and Sports Med. Inst. v. Empire Blue Cross Blue Shield*, No. 17-8697, 2018 WL 2758221, at *5 (D.N.J. June 7, 2018). In that case, as here, the plaintiff argued that, "by pre-authorizing the surgery, Defendant was bound to reimburse Plaintiff at a 'usual, customary, and reasonable' rate," thereby giving rise to claims for breach of contract and promissory estoppel. *Id.* at *6. The Court rejected those arguments, concluding that "the reimbursement rate that [the defendant] must pay is not dictated by reasonableness or fairness, but rather by [the plaintiff's] out-of-network reimbursement rate," requiring the Court to examine the terms of the patient's plan. *Id.* Nevertheless, at the motion-to-dismiss stage, the Court cannot find ERISA preemption where nothing in the Amended Complaint directs the Court to ERISA or an ERISA plan.

### C. Sufficiency of the Allegations

Defendants further argue that, even if Plaintiff's claims are not preempted by ERISA, they should nevertheless be dismissed because the allegations in the Complaint fail to state a claim upon which relief can be granted. (Mov. Br. at 13–21).

### 1. Implied Contract

"An implied-in-fact contract . . . is a true contract arising from mutual agreement and intent to promise, but in circumstances in which the agreement and promise have not been verbally expressed." *Baer v. Chase*, 392 F.3d 609, 616 (3d Cir. 2004) (quoting *In re Penn Cent. Transp. Co.*, 831 F.2d 1221, 1228 (3d Cir. 1987)). Therefore, in order to survive a motion to dismiss, Plaintiff must plead the elements of a contract claim: "(1) the parties entered into a valid contract, (2) the defendant did not perform his or her obligations under the contract, and (3) the plaintiff suffered damages as a result." *Days Inn Worldwide, Inc. v. Shara & Sons, Inc.*, No. 13-1049, 2013 WL 5535959, at *3 (D.N.J. Oct. 7, 2013) (quoting *Murphy v. Implicito*, 392 N.J. Super. 245, 265 (App. Div. 2007)).

In *E. Coast Advanced Plastic Surgery v. Aetna, Inc.*, No. 17-13676, 2018 WL 3062907, at *3 (D.N.J. June 21, 2018) ("*E. Coast*"), the Court considered an implied contract claim under facts very similar to the facts in the instant dispute. The Court determined that the plaintiff, a healthcare provider, sufficiently stated an implied-in-fact contract claim where the complaint alleged that the plaintiff rendered services in reliance on the defendant insurer's preauthorization of medical services. *E. Coast*, 2018 WL 3062907, at *3. The Court denied the defendant's motion to dismiss, reasoning that, through discovery, "the parties' conduct may show how it was understood that Plaintiff took [defendant's] pre-authorization letters as creating a promise to pay its usual and customary rates for medical services." *Id.*

The same analysis applies here. Plaintiff sufficiently alleges that the parties entered an implied-in-fact contract "through Defendants' course of conduct and interaction with Plaintiff," that Defendant failed to perform under the contract by failing to pay Plaintiff the correct amount for the services it rendered, and that Plaintiff suffered damages. (Am. Compl. ¶¶ 23–28). Defendants' argument that Plaintiff's contract claim fails because the Complaint does not allege

the precise contours of the agreement is unpersuasive, as an implied contract may exist even where "the parties do not state their terms." *Baer*, 392 F.3d at 616. An agreement that lacks a definite price term may be enforceable so long as "the parties specify a practicable method by which they can determine the amount" owed. *Id.* at 619. The Amended Complaint alleges that the amount Plaintiff billed Defendants represented "normal and reasonable charges" for the provided services according to the customary practice in orthopedic surgery in New Jersey. (Am. Compl. ¶ 19). Plaintiff is entitled to discovery to demonstrate how the parties would have understood or measured the price term in their alleged agreement.

### 2. Promissory Estoppel

A claim for promissory estoppel under New Jersey law requires a showing of the following elements: "(1) a clear and definite promise; (2) made with the expectation that the promisee will rely on it[;] (3) reasonable reliance; and (4) definite and substantial detriment." *Cotter v. Newark Housing Auth.*, 422 F. App'x 95, 99 (3d Cir. 2011) (quoting *Toll Bros., Inc. v. Bd. of Chosen Freeholders of Cty. of Burlington*, 194 N.J. 223, 253 (2008)). Plaintiff sufficiently alleges that Defendants' preauthorization of Patient's surgery was a promise that "induced Plaintiff to provide the medical services," and that Plaintiffs reasonably "relied upon this promise to its detriment" in providing the services to Patient. (Am. Compl. ¶¶ 21, 30–33). The Court therefore finds that Plaintiff adequately states a claim for promissory estoppel. *See E. Coast*, 2018 WL 3062907, at *3 (holding plaintiff sufficiently alleged promissory estoppel claim "because upon pre-authorizing the procedures, [defendant] should have understood that it was reasonable for Plaintiff to rely on the representations . . . which Plaintiff relied on to its detriment").

11

### 3. Account Stated

"A claim for account stated is similar to a claim for breach of contract, and requires a plaintiff to prove that there is an 'exact and definite balance' for goods delivered or services rendered that can be proven by a statement of account." *Progressive Freight, Inc. v. Framaur Ass., LLC*, No. 16-9366, 2017 WL 3872327, at *3 (D.N.J. Sept. 5, 2017) (quoting *Manley Toys, Ltd. v. Toys R Us, Inc.*, No. 12-3072, 2013 WL 244737, at *5 (D.N.J. Jan. 22, 2013)). Plaintiff alleges that its bills and records state an amount of $145,032.00 which Defendants owe to Plaintiff based on their preauthorization of the provided surgery. (Compl. ¶¶ 35–38). Having concluded that Plaintiff sufficiently alleges breach of an implied contract, the Court likewise finds that Plaintiff's account stated claim survives Defendants' motion to dismiss. *See E. Coast*, 2018 WL 3062907, at *3 (holding plaintiff sufficiently alleged account stated claim, reasoning that, "in pleading adequately the breach of contract and promissory estoppel claims, it follows that the parties' conduct may show mutual agreement as to the exact and definite amount [defendant insurer] owes Plaintiff"); *Manley Toys*, 2013 WL 244737, at *5 (declining to dismiss account stated claim because it was "inseparable from [the plaintiff's] breach of contract claim").

### 4. *Quantum Meruit*

The doctrine of *quantum meruit* "is applied when, absent a manifest intention to be bound, 'one party has conferred a benefit on another and the circumstances are such that to deny recovery would be unjust.'" *China Falcon Flying Ltd. v. Dassault Falcon Jet Corp.*, 329 F. Supp. 3d 56, 76 (D.N.J. 2018) (quoting *Kas Oriental Rugs, Inc. v. Ellman*, 394 N.J. Super. 278, 286 (App. Div. 2007)). "A plaintiff makes out a proper claim for *quantum meruit* when it pleads that 'services were performed with an expectation that the beneficiary would pay for them, and under circumstances that should have put the beneficiary on notice that the plaintiff expected to be paid.'"

*Manley Toys*, 2013 WL 244737, at *6 (quoting *Weichert Co. Realtors v. Ryan*, 128 N.J. 427, 438 (1992)). Here, Defendants argue that Plaintiff cannot recover under a *quantum meruit* theory because any benefit conferred by Plaintiff's performance of the surgical procedure benefited Patient, not Defendants. (Mov. Br. at 19). The Court agrees. Plaintiff argues that "it conferred a benefit on Defendant by providing its insured with medical services." (ECF No. 13 at 21). However, courts have held that an insurance company "derives no benefit" from services provided to an insured for purposes of a *quantum meruit* claim. *Broad St. Surgical Ctr.*, 2012 WL 762498, at *8 (quoting *Travelers Indem. Co. of Conn. v. Losco Grp., Inc.*, 150 F. Supp. 2d 556, 563 (S.D.N.Y. 2001)). As Plaintiff cites no authority to the contrary, the Court dismisses Plaintiff's *quantum meruit* claim with prejudice.

* * *

As in *E. Coast*, Defendants here "attack[] the merits" of Plaintiff's contract and promissory estoppel claims at the motion-to-dismiss stage, when the Court's task is to ask "not whether a plaintiff will ultimately prevail[,] but whether the claimant is entitled to offer evidence to support the claim." 2018 WL 3062907, at *4 (quoting *Twombly*, 550 U.S. at 563 n.8). With the exception of the *quantum meruit* claim, the Court concludes that Plaintiff is entitled to do so here.

## IV. CONCLUSION

For these reasons, Defendants' Motion to Dismiss is granted in part and denied in part. An appropriate Order accompanies this Opinion.

DATED: December 10, 2018

HON. JOSE L. LINARES
Chief Judge, United States District Court

13